# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| QUINN BASS, et al., | ) |
| | ) |
|     Plaintiffs, | ) |
| | ) |
| v. | ) Case No. 4:19-00282-CV-RK |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Before the Court is Defendant United States of America (the "Government")'s Motion to Dismiss for Lack of Subject Matter Jurisdiction. (Doc. 17.) The Motion is fully briefed. (Docs. 18, 27, 33.) After careful consideration, the Motion is **GRANTED**, and the case is **DISMISSED**.

## Background

Plaintiffs brings this action pursuant to Missouri's wrongful death statute, Mo. Rev. Stat. § 537.080, 28 U.S.C. §§ 1346(b), 1402(b), 2401(b), and the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671-2680. The case arises out of an explosion that occurred at Lake City Ammunition Plant ("Lake City") on April 11, 2017, which killed Lawrence C. Bass, Jr. ("Bass").

Lake City is a Government Owned-Contractor Operated ("GOCO") installation located in Independence, Missouri. On September 28, 2012, the Government awarded Orbital Alliance Technologies ("Orbital ATK") a production contract (Doc. 18-6) to produce small caliber rifle ammunition and a facilities contract (Doc. 18-7) for the operation, maintenance, and modernization of Lake City. (Docs. 18-4, ¶¶ 8-9.) Both the production contract and the facilities contract (collectively, the "Contract"), were in effect on April 11, 2017. Orbital ATK hired its own employees, including Bass. In addition to Orbital ATK's employees, one Active Duty Army Lieutenant Colonel and 27 civilian employees of the Army also worked at Lake City. (Doc. 18-2.) The Contract provided that Orbital ATK would be responsible for the safety of employees at Lake City and that the presence of Government employees and/or safety personnel would not affect Orbital ATK's responsibility for safety. (Docs. 18-6, 18-7.) Finally, within the Contract, the

Government reserved the right and power to inspect Orbital ATK's performance and cease Orbital ATK work if necessary. (Doc. 18-6, p. 162).

On April 11, 2017, Bass was scheduled to work in building #85, bay # 901. (Doc. 1.) His job was to "wedge" Tetrazene, a chemical compound used as a primer in the ammunition being produced. (*Id.*) Approximately 20 seconds into the "wedging" of Tetrazene, an explosion occurred killing Bass. (*Id.*) Following the explosion, Bass' surviving descendants M.B. and T.B., through their natural mother and next friend, Phynice Kelley, were awarded worker's compensation benefits from Orbital ATK. (Doc. 18-5.) Now, Plaintiffs have filed this action against the Government. Plaintiffs advance three theories of liability in the complaint: (1) negligence; (2) strict liability for hiring an independent contractor to perform an ultrahazardous activity; and (3) negligent entrustment. (Doc. 1.) The Government has now filed its motion to dismiss for lack of subject matter jurisdiction on grounds of sovereign immunity and Missouri Workers' Compensation Law.

**Legal Standard**

"Subject matter jurisdiction is the power of a federal court to decide the claim before it. *Id.* (citing *Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017)). "Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994). Federal courts retain only the power authorized by the Constitution and statute. *Id.* "Generally speaking, a federal court's subject-matter jurisdiction over a case must be based on either [a] federal question . . . or diversity." *Miller v. Clark*, 2013 U.S. Dist. LEXIS 196713, at *1 (W.D. Mo. June 14, 2013). If a federal court lacks jurisdiction over the subject matter of a case, the court must dismiss the action. Fed. R. Civ. P. 12(h)(3).

"A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action." *Knox v. St. Louis City Sch. Dist.*, 2018 U.S. Dist. LEXIS 209123, at *2 (E.D. Mo. Dec. 12, 2018). In deciding a Rule 12(b)(1) motion, a district court is required to distinguish between a facial attack and a factual attack. *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018). "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a factual attack, the Court "may look outside the pleadings to

affidavits or other documents." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). This does not convert the Rule 12(b)(1) motion into one for summary judgment, however. *Id.* (citation omitted). Instead, the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[No presumption of] truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Titus*, 4 F.3d at 593 n. 1. Further, Plaintiff bears the burden of proving jurisdiction exists. *Id.*; *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citation omitted). Finally, "[i]t is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

## Discussion

The Government makers four factual challenges to the Court's jurisdiction. The Court will analyze each argument in turn.

### A. The United States Cannot be Strictly Liable

In Count II of Plaintiffs' complaint, they allege the Government is strictly liable because it hired Orbital ATK to perform an ultrahazardous activity. (Doc. 1.) The Government points out however, it cannot be held strictly liable. (Doc. 18) (citing *Laird v. Nelms*, 406 U.S. 797, 802-03 (1972); *United States v. Seekinger*, 397 U.S. 203, 215 (1970)). Plaintiffs concede the Government cannot be strictly liable and seeks to amend the Complaint to state an additional claim(s) for negligence. (Doc. 27, pgs. 17-18.) However, Plaintiffs' request fails to comply with Local Rule 15.1. Specifically, Plaintiffs have failed to file a motion to amend and have not attached a proposed amended pleading as required by Local Rule 15.1(a)(2). Therefore, the Court will dismiss Count II of Plaintiffs' Complaint.[1]

---

[1] Even if Plaintiffs were to file an amended complaint however, such amendment would be futile as the Complaint would still be subject to dismissal for independent reasons discussed below in section D.

3

### B. The Discretionary Function Exception Shields the Government From Liability

Here, Plaintiffs concede the choice of the contractor was a discretionary decision and is barred by the discretionary function exception to the FTCA. (Doc. 27, p. 18.) Therefore, Count III will be dismissed. Because Count II and III will be dismissed as discussed above, the only remaining question then is whether or not Plaintiffs' negligence claims in Count I are barred by the discretionary function exception or on any other grounds.

"The [FTCA] did not waive the sovereign immunity of the United States in all respects." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). "Congress was careful to except from the [FTCA's] broad waiver of immunity several important classes of tort claims." *Id.* One exception to the FTCA is the discretionary function exception, which bars "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "The exception covers only acts that are discretionary in nature, acts that involve an element of judgment or choice, and it is the nature of the conduct, rather than the status of the actor that governs whether the exception applies." *U.S. v. Gaubert*, 499 U.S. 315, 322 (1991) (citations omitted). In determining the applicability of the discretionary function exception, courts use a two-step analysis. *Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019). First, the Court asks, "whether the challenged conduct or omission is truly discretionary, that is, whether it involves an element of judgment or choice instead of being 'controlled by mandatory statutes or regulations." *Id.* (citing *Herden v. United States*, 726 F.3d 1042, 1046 (8th Cir. 2013) (quoting *Gaubert*, 499 U.S. at 328)). "If the conduct or omission involves discretion, [the Court] next ask[s] whether the government employee's judgment or choice was based on considerations of social, economic, and political policy." *Id.* (citations omitted).

The first step in the analytical approach is to determine whether the challenged conduct or omission is truly discretionary, that is whether the conduct was "controlled by mandatory statutes or regulations." *Gaubert*, 499 U.S. at 328. Conduct is discretionary if the acting employee's or agent's action involve an element of judgment or choice." *Id.*; *see also C.R.S. by D.B.S. v. United States*, 11 F.3d 791, 795 (8th Cir. 1993) (citation omitted). Here, Plaintiffs point to the Department of Defense Manual 4145.26 in their complaint to establish there were mandatory safety requirements Government employees were required to follow. However, that manual imposes

mandatory obligations on contractors only, not the Government. *Thompson v. Dilger*, 696 F. Supp. 1071, 1078 (E.D. Va. 1988) ("[4145.26] appl[ies] only to government contractors.") Thus, 4145.26 cannot serve as a basis to impose mandatory, non-discretionary duties on the Government.

Plaintiffs' next argument hinges on *McMichael v. United States*, 751 F.2d 303 (8th Cir. 1985) (finding the Government was subject to suit, and liability was not barred by the discretionary exception, where the "[the Defense Department Inspectors] had a number of precise inspections to perform which involved no judgment concerning agency policy.") The Government asserts *McMichael* should not control for a few reasons. One, the Government points to 48 C.F.R. § 252.223-7002(f)(2), incorporated by reference into the contract (Doc.18-6, p. 162), which states "[i]f the Government acts or fails to act in surveillance or enforcement of the safety requirements of this contract, this does not impose or add to any liability of the Government." This federal regulation was enacted in 1991 by the Department of Defense, after the *McMichael* decision. The Government argues that by the regulation's plain language the Government cannot be liable, and also that the regulation makes *McMichael* distinguishable. The Court finds this argument unpersuasive. "The Army cannot by regulation or contract displace the liability which Congress has authorized." *Aretz v. United States*, 604 F.2d 417, 430–31 (5th Cir. 1979), on reh'g, 635 F.2d 485 (5th Cir. 1981), certified question answered, 248 Ga. 19, 280 S.E.2d 345 (1981). Additionally, the Eighth Circuit found the discretionary function exception was not a bar to the plaintiffs' claims in *McMichael*, even though there was a federal regulation, 32 C.F.R. 7-104.79 (1984), with similar language as the regulation and contract at issue in this case.[2] 751 F.2d at 307 n. 1.

The Government further asserts *McMichael* is distinguishable because in this case, Government employees had no mandatory policies or regulations to follow. (*See* Doc. 18-2.) However, Mr. Styvaert, the Army Safety Director of Joint Munitions Command, which is responsible for munitions production, storage, and demilitarization at GOCO installations, including Lake City, stated he was responsible for *ensuring* the contractor adhered to contractual

---

[2] Armed Services Procurement Regulation § 7-104.79(d), which was incorporated into the contract in *McMichael*, stated, "[n]either the requirements of this clause nor any act or failure to act by the Government in surveillance or enforcement thereof shall affect or relieve the Contractor of responsibility for the safety of his personnel and his property and for the safety of the general public in connection with the performance of this contract, *or impose or add to any liability of the Government for such safety*" (emphasis added).

5

safety requirements. (Doc. 18-3) (emphasis added). Additionally, unlike *McMichael*, Plaintiffs point out they have not yet had the opportunity to conduct discovery to establish whether there were precise safety precautions or inspections Government employees were required to perform. Plaintiffs thus argue jurisdictional discovery should be allowed to determine if the discretionary function exception applies. On the current record, the Court cannot determine whether the challenged conduct was truly discretionary or whether the discretionary function exception applies. However, the Court need not address whether jurisdictional discovery is needed because, as addressed below in section D, Plaintiffs' claims fail on independent grounds.

### C. Applicability of the Contractor Exclusion

The Government also contends that Plaintiffs' claims in Count I are barred by the contractor exclusion. The Court disagrees. 28 U.S.C. §1346(b)(1) confers jurisdiction and waives sovereign immunity only for the acts or omissions of an "employee of the Government while acting within the scope of his office or employment." An employee of the Government includes, among other things, persons acting on behalf of a federal agency in an official capacity. *Kirchman v. U.S.*, 8 F.3d 1273, 1275 (8th Cir. 1993) (citing 28 U.S.C., § 2671). Contractors are excluded from the definition of federal agency. *Id.* Plaintiffs, however, make specific allegations that the Government was itself negligent in how it monitored and maintained safety at Lake City. The Government claims in response that the court in *Kirchman* dismissed the plaintiff's negligence claims pursuant to the contractor exclusion in 28 U.S.C. §2671, as well as, alternatively the discretionary function exception. (Doc. 33) (citing *Kirchman*, 8 F.3d at 1273). The Court's reading of *Kirchman*, however, indicates that it was the discretionary function exception, not the contractor exclusion, that provided the basis of dismissing plaintiffs' negligent supervision claims against the government. *Kirchman*, 8 F.3d at 1275-76. Therefore, because Count I alleges the Government itself was negligent (as opposed to only the contractor) and because *Kirchman* does not provide support for the application of the contractor exclusion as to the Government itself, Plaintiffs' claims in Count I are not barred by the contractor exclusion. However, for the reasons discussed below in section D, Count I will be dismissed in its entirety.

### D. Missouri Workers' Compensation is Plaintiffs' Sole Remedy

The FTCA waiver of sovereign immunity is limited to suits "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. §1346(b)(1). Put another way, in

6

FTCA cases, the Government's sovereign immunity is waived only if a similarly situated private party would be liable for the same conduct under the substantive law of the state where the act or omission occurred. *Green Acres Enters., Inc. v. United States*, 418 F.3d 852, 856 (8th Cir. 2005) (citation omitted). Thus, any defense available to a private party under the applicable state law, is also available to the United States. *See Knowles v. United States*, 29 F.3d 1261, 1265 (8th Cir. 1994) ("The United States, under the FTCA, is held liable to the same extent as a private party. . . . Therefore, the United States shares in the protection offered these individuals . . . to the same extent the individuals would if they were sued directly.") The Government contends that all counts of Plaintiffs' complaint are barred because Plaintiffs received workers' compensation benefits under Missouri law, and such workers' compensation benefits are Plaintiffs' sole remedy.

Under Missouri's Workers' Compensation Law, liability is imposed on certain employers subject to the law for personal injuries and deaths of their employees for accidents arising out of and in the course of their employee's employment. Mo. Rev. Stat. §§ 287.060 and 287.120. Workers' Compensation law provides for the exclusive remedy of injured workers. *Id.*; *State ex rel. Tri-County Elec. Co-op. Ass'n v. Dial*, 192 S.W.3d 708, 710 (Mo. banc 2006) (citing *State ex rel. Taylor v. Wallace*, 73 S.W.3d 620, 621-22 (Mo. banc. 2002)). It is undisputed that Plaintiffs M.B. and T.B. received workers' compensation benefits from Orbital ATK as a result of Bass' death. (*See* Doc. 18-5.)

Plaintiffs argue their claims are not barred by the exclusive remedy provision of Missouri Workers' Compensation Law because they allege independent acts of negligence against the Government and not claims of vicarious liability. *Woodall v. Christian Hosp. NE-NW*, 473 S.W.3d 649, 660 (Mo. Ct. App. 2015) ("[w]orkers' compensation laws have not been barriers to suits by injured employees against negligent third parties" when alleging general negligence) (citing *Zueck v. Oppenheimer Gateway Properties, Inc.*, 809 S.W.2d 384, 390 (Mo. 1991)). However, Plaintiffs' claims are without merit. The court in *Woodall*, in holding workers' compensation was not a bar to plaintiffs' suit, reasoned that workers' compensation should not extend to anyone other than an employer. *Id.* Additionally, the Court specifically found the defendant was not plaintiff's employer. *Id.* Thus, the determination of whether the Government was Bass' statutory employer is of critical importance. To qualify as a statutory employer under Missouri Workers' Compensation Law, three conditions must be met:

(1) The work was performed pursuant to a contract;

(2) The claim arises on or about the premises of the statutory employer; and

(3) The work is in the usual course of business of the statutory employer.

Mo. Rev. Stat. § 287.040.1; *Bass v. Nat'l Supermarkets, Inc.*, 911 S.W.2d 617, 619-20 (Mo. banc. 1995). The first two conditions are satisfied. First, there is no dispute Bass was producing Tetrazene when the explosion occurred or his work was performed pursuant to the Contract between Orbital ATK and the Government. Second, there is no dispute Bass' death occurred at Lake City, a facility owned by the Government.

The only remaining issue is whether the work Bass was doing was in the usual course of business of the Government. The Missouri Supreme Court has clarified what work qualifies as "work in the usual course of business" of the alleged statutory employer:

> [W]e define a putative employer's "usual business" as used in section 287.040 as those activities (1) that are routinely done (2) on a regular and frequent schedule (3) contemplated in the agreement between the independent contractor and the statutory employer to be repeated over a relatively short span of time (4) the performance of which would require the statutory employer to hire permanent employees absent the agreement.

*Bass*, 911 S.W.2d at 621. This definition is designed to exclude "specialized or episodic work that is essential to the employer but not within the employer's usual business as performed by its employees." *Id*. Since *Bass*, Missouri courts have placed much less emphasis on the nature of the work than the nature of the agreement and the timeframe under which it was performed. *Richter v. Union Pac. R.R. Co.*, 265 S.W.3d 294, 302 (Mo. Ct. App. 2008).

Bass' scheduled work assignment in producing Tetrazene falls within the ambit of the "usual business" definition. The Army is in business of land warfare, and as such requires a ready supply of ammunition. (*See* Docs. 18-2, 18-3, 18-4.) Bass' job duties required him to manufacture and produce Tetrazene, a compound used in the production and manufacturing of ammunition. Producing Tetrazene was routine, scheduled, repetitive, and would have required the Government to hire its own employees but for having contracted with Orbital ATK. (Docs. 18-2, 18-4, 18-6.) Further, the Supreme Court of Missouri has stated courts must give the Workers' Compensation Law "a liberal reading, deciding close cases in favor of workers' compensation coverage." *Bass*, 911 S.W.2d at 621. Other courts in similar cases have held the United States Government to be a statutory employer under workers' compensation laws. For instance, in *Nofsinger v. United States*, the Department of the Army had contracted with an independent contractor for the management and operation of the Sunflower Army Ammunition

Dump. 727 F. Supp. 586, 587 (D. Kan. 1989). The plaintiff was employed by the independent contractor and was injured while working at the ammunition dump. *Id* at 587. Still, the court found the United States was in the same position as a statutory employer under the Kansas Workers' Compensation Act for liability purposes, and thus, the United States was entitled to assert the exclusive remedy provision as a defense. *Id.* at 589. The court in *Wilcox v. United States* also held the United States can be a statutory employer and assert statutory employer status as a defense to an action filed under the FTCA. 910 F.2d 477, 479 (8th Cir. 1990) (applying Missouri Workers' Compensation Law). In light of these cases, and the Court's liberal reading of the Missouri Workers' Compensation Law, the Court finds the Government to have been a statutory employer of the Bass. Because the Government was Bass' statutory employer at the time of the explosion, Plaintiffs' exclusive remedy is under Missouri Workers' Compensation law. Mo. Rev. Stat. § 287.120.2. Therefore, the Court will dismiss Plaintiffs' claims in counts I, II, and III.

## Conclusion

Accordingly, and after careful consideration, Government's Motion to Dismiss (Doc. 17) is **GRANTED**. Plaintiffs' claims are hereby **DISMISSED** for lack of jurisdiction.

**IT IS SO ORDERED.**

    s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED: December 17, 2019